UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES of the LOCAL 138, 138A & 138B INTERNATIONAL UNION OF OPERATING ENGINEERS WELFARE FUND, ANNUITY FUND, LEGAL FUND, VACATION FUND, APPRENTICESHIP TRAINING FUND and TRUSTEES of the CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, | Civil Action No. 19-CV-2207 <u>COMPLAINT</u> |
| Plaintiffs, | |
| - against - | |
| SWEET HOLLOW MANAGEMENT CORP., | |
| Defendant. | |

Plaintiffs, Trustees of the Local 138, 138A & 138B International Union of Operating Engineers Welfare Fund, Annuity Fund, Legal Fund, Apprenticeship Training Fund ("Local 138 Funds") and Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund") (collectively the "Funds"), by and through their attorneys, Pitta LLP, as and for their complaint, respectfully allege as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is a civil action brought pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, ("LMRA"), by the Trustees of the Funds to recover delinquent benefit fund contributions that Defendant failed to pay on behalf of its employees, for injunctive and other equitable relief, and for breach of contract. The complaint alleges that, by failing, refusing and neglecting to comply with specific statutory

and contractual obligations, defendant violated its collective bargaining agreements with the International Union of Operating Engineers Local 138, 138A & 138B (the "Union" or "Local 138"), the respective trust agreements of the Funds, and ERISA.  In addition to benefit contributions, Defendant also owes interest, liquidated damages, auditor's fees, attorney's fees and costs.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, section 502(e)(1) and (f) of ERISA, 29 U.S.C. § 1132 (e)(1) and (f), and section 301 of the LMRA, 29 U.S.C. § 185.

3.      Venue properly lies in this district under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and section 301 of the LMRA, 29 U.S.C. § 185.  Additionally, venue properly lies in this District pursuant to 28 U.S.C. § 1391, because defendant maintains its principal place of business in this District and a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

4.      Plaintiffs Trustees are the trustees of jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to collective bargaining agreements in accordance with sections 302(c)(5) and (c)(6) of the LMRA, 29 U.S.C. § 186(c)(5), (c)(6). Each of the Funds is an employee benefit plan within the meaning of sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(1), (2), (3) and 1132(d)(1), and a multi-employer plan within the meaning of sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37) and 1145. The Local 138 Funds maintain offices and administer benefits at 137 Gazza Boulevard, Farmingdale, New York 11735.

{00659570.DOCX / }

5.      The Trustees of the Funds are fiduciaries within the meaning of sections 3(21) and 502 of ERISA, 29 U.S.C. §§ 1002(21) and 1132, and bring this action in their fiduciary capacity.

6.      The Funds are maintained pursuant to Agreements and Declarations of Trust (the "Trust Agreements") for the purposes of receiving and collecting required benefit contributions from employers, including Defendant, and providing various fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements with the Union (collectively, the "CBAs").

7.      The Trust Agreements and the CBAs are plan documents within the meaning of section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). The Funds are third-party beneficiaries of the CBAs.

8.      Upon information and belief, Defendant Sweet Hollow Management Corp. ("Defendant") is a New York corporation and is authorized to conduct business within the State of New York, with a principal place of business at 1 Schwab Road, Melville, New York 11747.

9.      At all relevant times, Defendant has been an "employer" within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145 and an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

**BACKGROUND**

10.      At all relevant times, Defendant has been a party to or otherwise bound by conduct to CBAs with the Union, to which the Funds are third party beneficiaries, governing the rates of pay, wages, hours of employment and other conditions of work of Union members and others performing work covered by the Agreement and employed by Defendant within the jurisdiction of the Union.  At all times relevant herein, the Agreement was in full force and effect.

{00659570.DOCX / }

11.     Pursuant to the Agreement, Defendant is required to pay all employees performing covered employment within the jurisdiction of the Union an agreed upon wage rate.

12.     Pursuant to the Agreement, Defendant is required to pay benefit contributions and/or wage supplements to the Funds in agreed-upon amounts and percentages based upon the number of hours paid to employees performing covered employment within the jurisdiction of the Union, and has generally done so.  Pursuant to the Agreement, Defendant is subject to and bound by the Trust Agreements.  The Agreement and the Trust Agreements provide, *inter alia,* that an employer delinquent in the payment of benefit contributions shall be liable for all contributions owed, together with liquidated damages, interest, attorney's fees and costs, court costs and audit fees, all in accordance with ERISA.

13.     Pursuant to Section 209 of ERISA, 29 U.S.C. § 1059, Defendant has a duty to maintain adequate records regarding the hours worked by its employees for whom fringe benefit contributions have and/or are required to be paid into the Funds.

14.     Pursuant to the terms and conditions of the Agreement and Trust Agreements, Defendant is required, *inter alia,* to file certain employer contribution remittance reports with the Funds, and it is further required to permit and cooperate in the audits of its books and payroll records and to furnish to the Funds such information, books, records and reports as are required to ensure compliance with the terms of the Agreement, and to ascertain the amount of fringe benefit contributions due the Funds. Remittance reports inform the Funds how much a particular employer owes in benefit contributions for a particular time period.

15.     At all relevant times, because of its obligations as a signatory to a CBA and/or through its conduct evincing an intent to be bound, including, but not limited to, making

contributions to the Funds, paying the current wage rate, paying the current contributions rate, and operating on Union jobsites, Defendant was required but failed and refused to submit remittance reports to the Funds together with payment for all benefit contributions owed.

16.     The Funds rely upon Defendant and other employers to make proper contributions required by the Agreement in order to provide pensions, health insurance, annuities, and other benefits to the employees working for Defendant that are covered by the Agreement.

17.     Pursuant to the CBA, at Article II, Section 5, "[f]ailure or refusal to . . . pay Fund contributions, or to comply with the provisions of this Agreement shall constitute a breach of this Agreement by the defaulting Employer."

## DEFENDANT OWES THE FUNDS UNPAID CONTRIBUTIONS, LIQUIDATED DAMAGES, INTEREST, AND ATTORNEY'S FEES

18.     Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. §1145.

19.     Defendant's failure to make payment of all contributions due and owing to the Funds constitutes a violation of the Agreement, the Trusts, and section 515 of ERISA, 29 U.S.C. § 1145.

20.     The Agreement, the Trusts, and section 502 of ERISA, 29 U.S.C. § 1132, provide that, upon a finding of an employer violation as set forth above, the Funds shall be awarded the unpaid contributions, plus interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and such other legal or equitable relief as the court deems appropriate.

{00659570.DOCX / }

## THE FUNDS' AUDITOR CONDUCTED A PAYROLL AUDIT OF DEFENDANT'S BOOKS AND RECORDS

21.     To determine whether Defendant is paying contributions in compliance with the terms and conditions of the CBA, it, along the Trust Agreements, authorize the Trustees to conduct payroll audits.

22.     To that effect, pursuant to the CBA and relevant labor laws, Defendant is required to maintain payroll and other documents relating to its obligation to pay benefit contributions for at least six years.

23.     Under the IUOE Local Union 138 Fringe Benefit Funds Policy Statement for Delinquent Contributing Employers (the "Collections Policy"), the Trustees are permitted to review financial records of contributing employers during a payroll audit, including, but not limited to:

     a.   accounting records;

     b.   payroll records;

     c.   federal and state tax returns;

     d.   federal and state payroll tax returns;

     e.   bonding information;

     f.   cash disbursement/general ledger records;

     g.   invoice and/or sales records; and

     h.   such other books and records of an employer necessary in order for the auditor to ascertain if proper contributions have been made and to give an unqualified opinion.

Attached hereto as Exhibit "A" is a copy of the Collections Policy. *See* Section 1(3).

24.     The Funds' auditor, Berdon LLP, conducted a payroll audit of Defendant's books and records covering the periods of from May 1, 2017 through June 30, 2018 (the "Audit") and assessed a delinquency of $82,813.22 against Defendant as a result of work performed by employees of Defendant under the Agreement.

25.  `  Defendant has not disputed the amounts owed to the Funds or provided the Funds with documentation regarding the amounts determined in the Audit to be owed.  In absence of any such evidence, the Auditors concluded that Defendant failed to pay contributions in the amount of $82,813.22 and issued a final report. Attached hereto as Exhibit "B" is a copy of the final audit report (collectively, "Audit").  No part of the benefit contributions found to be due to the Funds in the Audit have been paid, although duly demanded.  By reason of the foregoing, Defendant has breached its contractual and statutory obligations to the Funds and its participants have been damaged.

26.     On January 28, 2019, consistent with the Collections Policy, the Funds, through its counsel, sent to the Defendant, by United Parcel Service Next Day Mail, a copy of the Audit and a demand for payment of the Audit findings within five days of the date of the letter, which was delivered on January 30, 2019, tracking no. 1Z18E63Y0196904639 (Exhibit "C").

27.     More than five days have passed and Defendant has not responded to the Funds' letter.

28.     Based on the Audit, Defendant owes the total amount of $82,813.22, which is comprised of contributions, plus interest, auditor's fees, liquidated damages, attorney's fees and costs.

{00659570.DOCX / }

29.     Defendant is liable for interest from date that the contributions became due. Under Section 2 of the Collections Policy, interest accrues on deficient contributions at the prime rate, or at such higher rate as provided under an employer's CBA. Prime rate is currently 5.25%. Defendant therefore owes $4,347.69 in interest.

30.     According to the Collections Policy, Defendant must pay the "actual cost of the payroll audit if the payroll audit results in a finding that the employer has underpaid, during any twelve month period, at least (a) $2,000 or (b) 5% of the employer's annual contributions. Therefore, Defendant is also required to pay the costs of the Audit.

31.     Under Section VI of the Collections Policy, Defendants owes liquidated damages since the Funds had to commence a lawsuit to collect the unpaid contributions. Liquidated damages are calculated by the greater of (a) interest on the deficient contributions or (b) 20% of the deficient contributions.

32.     The Funds are also entitled to the attorney's fees and costs "for all time spent by Funds' Counsel in collection efforts . . . or in enforcing the Board of Trustees' rights to payroll audits."

33.     Accordingly, pursuant to the Agreement, the Trust Agreements, the Collection Policy and section 502 of ERISA, 29 U.S.C. § 1132, Defendant is liable to the Funds for delinquent contributions pursuant to the Audit in the amount of $82,813.22, plus interest, liquidated damages, auditor's fees, and attorneys' fees and costs incurred by the Funds.

## AS AND FOR A FIRST CLAIM FOR RELIEF

34.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 34 of this Complaint, as if fully set forth herein.

{00659570.DOCX / }

8

35.     Defendant is required to pay any contributions due according to the audit, plus interest on the deficient contributions, liquidated damages, auditor's fees, attorney's fees, and costs in accordance with the Trust Agreements and section 502(g) of ERISA, 29 U.S.C. § 1132(g).

36.     Defendant, by failing to pay amounts due as a result of the Audit, Defendant violated section 515 of ERISA, 29 U.S.C. § 1145, as well as the CBA and Trust Agreements.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for as follows:

a.      Ordering Defendant to pay delinquent contributions pursuant to the Audit in the amount of $82,813.22, plus interest thereon from the date each such unpaid contribution was due pursuant to the Agreement and ERISA § 502 (g) (2), 29 U.S.C. § 1132 (g) (2);

b.      Ordering Defendant to pay an additional amount equal to the greater of (i) the amount of interest awarded pursuant to paragraph (a) above, or (ii) liquidated damages provided for under the Agreement up to the sum of 20% of the unpaid contributions, as mandated by ERISA § 502(g) (2) (c), 29 U.S.C. § 1132(g) (2) (c);

c.      Ordering Defendant to pay all costs, auditors' fees, disbursements and reasonable attorney's fees incurred by the Funds; and

d.      Such other and further relief as this Court deems just and proper.


Dated: New York, New York
       April 15, 2019

                                        Respectfully submitted,

                                        PITTA LLP
                                        *Attorneys for Plaintiffs*

                                        By: _____
                                            Michael Bauman
                                        120 Broadway, 28th Floor
                                        New York, NY  10271
                                        Telephone: 212-542-5536
                                        Facsimile: 212-652-3891
                                        mbauman@pittalaw.com

# EXHIBIT A

# INTERNATIONAL UNION OF OPERATING ENGINEERS
## LOCAL UNIONS 138, 138A, 138B & 138C

### FRINGE BENEFIT FUNDS
### POLICY STATEMENT

## FOR DELINQUENT CONTRIBUTING EMPLOYERS

### SECTION I

### GENERAL POLICY

This Policy is being adopted by the Local 138, 138A, 138B & 138C International Union of Operating Engineers Welfare (including its Vacation and Supplemental Unemployment Accounts), Annuity, Legal, Apprenticeship Training and Joint Industry Fund Fringe Benefit Funds, as·well as on behalf of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers. (collectively the "Fund" or "Funds") jointly in order to coordinate the collection of required contributions; however, each Fund reserves the right to proceed independently in the collection of required contributions. It is the policy of the Funds to collect all employer contributions as they are due and to make such diligent and systematic efforts as are appropriate under the circumstances to do so. References to a "Fund" shall refer to each Fund separately. The Funds should insure that the International Union of Operating Engineers Local Unions 138, 138A, 138B & 138C ("Union") receives a copy of this Policy and, to the extent possible, incorporates it by reference in the Collective Bargaining Agreements with the various contributing employers.

If an employer ceases to have an obligation to contribute to a Fund under a Fund's Trust Agreement, a Collective Bargaining Agreement or applicable law, the employer shall remain subject to this Policy with regard to the time period during which the employer was obligated to contribute to the Fund.

The Trustees of the Funds have the legal right to exercise all remedies allowable under the Trust Agreements and under the Employee Retirement Income Security Act of 1974, as amended (ERISA), including, but not limited to:

1.    the right to establish when contributions are due (Due Date);

2.    the right to establish a random audit program;

3.    the right to audit the financial records of contributing employers, including, but not limited to, accounting records, payroll records, federal and state tax returns, federal and state payroll tax returns, bonding information, cash disbursement/general ledger records, invoice and/or sales records and such other books and records of an employer necessary in order for the auditor to ascertain if proper contributions have been made and to give an unqualified opinion. In connection with any audit, the auditor should confirm that the social

security numbers reflected in the audit match the employee's name prior to finalizing the audit, particularly if Lead Engineer reports are a basis for a possible deficiency. Lead Engineer reports shall be verified by the lead engineer and the Employer whenever possible, to insure accuracy.

Additionally, the auditor should confirm, in coordination with the Funds' collection coordinator and/or Subcommittee, that there is a Collective Bargaining Agreement for the relevant period prior to commencing an audit, either in a draft or final form, and that the audit covers the period of the Collective Bargaining Agreement (any questions about coverage should be referred to the Funds' legal counsel).

The auditor is authorized to issue a final audit where the audit does not reflect any deficiency, any exception or the requirement of further supplemental audit procedures. In all other circumstances, the audit report should be issued in a "draft" form subject to finalization upon consultation either with the Funds' Trustees or Collection Subcommittee, the Funds' Coordinator or Funds' Counsel.

4.      the right to require that the delinquent employer pay the costs of an audit, interest at the prime rate or such higher rate, as provided under the employer's Collective Bargaining Agreement, attorneys fees and other expenses incurred by the Funds in determining the amount of delinquency and in the collection of such delinquency;

5.      the right to collect liquidated damages in a sum equal to twenty (20%) percent of the unpaid contributions or double interest damages, whichever is higher;

6.      the right to require a bond or a cash deposit as security for prompt future payments due from an employer that has been delinquent in its contributions to a Fund, in the sole discretion of the Funds' Trustees by providing written notice and demand to any such employer, specifying the amount required for such bond or cash deposit and the deadline for the employer to provide same to the Funds' Trustees; and

7.      the right to take all other steps and to perform all other acts that are necessary in order to collect contributions due the Funds in a timely and expeditious manner.

The procedures set forth herein shall be followed unless the Funds' Board of Trustees or their designees determine that they should be modified in a particular instance.

The Board of Trustees have designated a Collection Subcommittee who shall meet periodically and authorize recommendations as to the method and scope of audits hereunder, with the understanding that such methodology shall be transmitted to the Board of Trustees.

All questions or disputes relating to the interpretation, meaning and/or application of this Policy shall be finally and exclusively resolved by the Funds' Board of Trustees, or by designation, the Collection Subcommittee, in the exercise of their discretion and in the

- 2 -

performance of their fiduciary obligations to the Funds' participants and beneficiaries, for the protection of the financial integrity and soundness of the Funds and the efficient and effective administration of the Funds.

## SECTION II

## ADMINISTRATIVE PROCEDURE

In accord with the provisions of the Trust Agreements and the above general Policy declaration, the following administrative steps shall be taken to effectuate the collection of delinquent contributions

1.      Where applicable, if an employer's shop report, weekly payroll or remittance report, as supplied by the employer, and the full amount of contributions are not received by the established Due Date, the Funds directly, through the Collection Subcommittee, or by its Counsel, shall consider the employer to be delinquent and shall cause a delinquency notice to be sent via first class mail to the delinquent employer, such letter to be issued through its Funds' Coordinator or as directed. The notice shall advise the employer that the contributions must be received within fourteen (14) days of the date of the notice so as to avoid interest charges, legal fees and penalties. The employer is responsible to keep the Fund informed of any change in business address. Any notice sent by the Funds to the last known business address shall be deemed adequate notice.

Any employer subject to this Policy must notify the Funds' Office, in writing, of any change or modification to the name in which the employer conducts business. Notification of the establishment of a new business entity by the employer must also be sent to the Funds' Office.

2.      Interest shall accrue on delinquent contributions from the Due Date at the prime rate, or at such higher rate as provided under an employer's Collective Bargaining Agreement.

3.      If an employer has not made the remittance within fourteen (14) days from the date of the Notice, the Funds Coordinator and/or Collection Subcommittee shall refer the matter to the Funds' Legal Counsel for collection.

Legal Counsel shall follow procedures set out in Section III of this Policy Statement.

4.      If an employer pays the principal amount of the delinquency but does not pay accrued interest and/or any other amounts owed, acceptance of the principal amount shall not constitute a waiver of the Funds' claim for accrued and unpaid interest and/or any other amounts.

- 3 -

SECTION III

LEGAL ACTION AND SETTLEMENT

1.   When a collection matter has been referred to the Funds' Legal Counsel, such counsel shall cause to be sent a lawyer's demand for payment letter, upon consultation with the Funds' Coordinator and Collection Subcommittee.

2.   In the event an employer fails to pay the delinquent contributions and interest within seven (7) days after Legal Counsel's demand for payment, upon consultation with the Collection Coordinator and Subcommittee, Legal Counsel shall initiate suit to recover the delinquency unless Counsel or the Collection Subcommittee recommends a different course of action based upon pertinent factors which may include, but are not limited to, the following:

    a.   the amount of the delinquency;

    b.   the length of time the delinquent amount has been owed;

    c.   the financial condition of the employer;

    d.   the employer's past performance as a contributing employer;

    e.   any other factor that, in the discretion of the Trustees, and upon consultation with the Funds' Collection Coordinator or Subcommittee, may have a material bearing on the collection of the delinquent contributions.

3.   Legal Counsel, upon consultation with the Funds' Coordinator and Collection Subcommittee, is authorized to enter into settlement negotiations with delinquent employers in accordance with the following guidelines. Without further approval of the Boards of Trustees, Legal Counsel or other representatives of the Trustees (the Collection Coordinator and Subcommittee) may agree to the immediate payment of principal plus interest and legal fees. Immediate payment shall mean complete payment within three (3) months. Without further approval of the Board of Trustees, Legal Counsel, with as of the Collection Subcommittee and Coordinator may also agree to a payment schedule not to exceed twenty-four (24) months for all amounts owed, including legal fees and interest on the contributions owed calculated at the prime rate, or at such higher rate as provided under an employer's Collective Bargaining Agreement, compounded from the Due Date to the payment date. Any settlement which waives or compromises the amount owed, including interest, attorneys' fees or costs, must be approved by the Board of Trustees or the Collection Subcommittee thereof, in consultation with the Funds' Coordinator. In connection with any settlement negotiations with delinquent employers which contemplate payment over a period of time, Legal Counsel shall seek to obtain from the employer a stipulation whereby the principal officer of a corporation or other entity, both in his/her corporate/representative capacity and personally, shall, in each capacity, guarantee

- 4 -

payments (i.e., personal guaranties) under any such payment schedule, and if deemed appropriate by the Trustees, Subcommittee or other representative, such settlement agreement shall include a provision for a Confession of Judgment. In those cases where it is deemed prudent to waive a portion of the interest and other related payments, a personal individual guarantee and/or Affidavit of Confession of Judgment should be obtained, if possible.

4.    Unless the Trustees specifically agree to the contrary, no settlement may permanently waive the collection of interest, liquidated damages or attorneys' fees, although any settlement may suspend the collection of interest, liquidated damages, or attorneys' fees until a subsequent delinquency if the current collection of those amounts would involve unwarranted expense.

5.    Settlements calling for payments over time must be in writing and signed on behalf of the Funds (by a Union Trustee and an Employer Trustee) and the employer. Such settlement must include the requirement to make current contributions on a timely basis and shall include appropriate default judgment requirements in the event the employer fails to make the required payments, together with the above-referenced provisions, i.e., personal guarantee.

6.    The Board of Trustees, or by designation, the Collection Subcommittee, maintains the discretion not to continue pursuing the collection of certain delinquent contributions or to commence a lawsuit if doing so would not be in the best interests of the participants and beneficiaries Funds.

7.    The Board of Trustees, or by designation, the Collection Subcommittee, reserves the right to accept or reject an employer's proposal regarding any delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim for delinquent amounts as may be deemed prudent and upon consultation with Legal Counsel.

In such case as it is deemed prudent to compromise any claim for delinquent obligations, those monies received shall be applied on a case by case basis to outstanding Annuity, Vacation, Welfare and Pension benefits due and owing, the Fund's Coordinator, in consultation as appropriate with the Board of Trustees, having final discretion as to the application of monies received to such benefits.

Provided however, it is the intent that in such circumstances, any monies received shall be applied in the following priority order: Pension, Annuity, Vacation and Welfare Funds. Divergence from this priority order shall be allowed in special circumstances with approval of the Collection Subcommittee and/or Coordinator, such as where certain monies are needed in order to allow a participant to remain in, or become eligible for health care benefits.

In this connection, a report shall be processed through the Funds' administrative staff or Funds' Coordinator that sets forth the application of those monies received, those individuals who will be credited for such monies, and how and in what manner

- 5 -

funds will be distributed to respective fringe benefit funds (i.e., annuity, vacation, welfare and pension benefits), and how they will be distributed in case of periodic payments.

8.     Notwithstanding the procedures set out in this Policy, the Board of Trustees may refer any delinquent account to Legal Counsel at an earlier or later date than provided for herein when circumstances warrant that collection action be initiated to collect delinquent contributions.

9.     The Board of Trustees may, from time to time, appoint a Committee of at least one employer and one Union Trustee to act on behalf of the Board of Trustees, or may appoint the Administrator or a Funds' Coordinator to act on its behalf as provided for under this Policy.

10.     The Funds' Coordinator, working with the Funds Office, shall provide a report, on an "as needed" and/or on such other basis, in those circumstances where a participant should be credited with hours of pension service based on employment subject to a Collective Bargaining Agreement.

The presumptive method of establishing entitlement to such a request for credited pension hours shall be based on Lead Engineers Reports or other Funds' records that set forth pension credited service information. The Funds' Coordinator may consider other records, such as pay stubs, etc. as a secondary source of information.

Funds' Counsel shall provide a report in each instance as to whether contribution payments for such hours of pension service that are to be credited are collectible or uncollectible. In the event an appeal is made by a participant regarding his calculation of pension credits, the Funds' Office will only be required to review previous records, six (6) years from the date the appeal is received by the Funds' Office.

## SECTION IV

## PAYROLL AUDIT POLICY

1.     a.     The Board of Trustees, or by designation, the Collection Subcommittee, shall have discretion in determining which employers will be audited in each year. Each employer participating in the Funds shall generally be audited at least once during a designated period, such period to commence from the date of the last audit of the employer, or in cases where an employer has not previously been audited, from the date the employer first became a participating employer in the Funds.

b.     The period audited shall be three (3) years, unless circumstances dictate otherwise. In instances where the Trustees decide not to audit a particular employer at least once during the designated period audited shall be determined by the Trustees based on the particular facts and circumstances.

- 6 -

c.    Notwithstanding the guidelines of this Section, the Trustees may, in the exercise of their discretion, determine that the audit schedule set forth above should not be followed in a particular instance.

2.    If an employer ceases to have an obligation to contribute to a Fund under that Fund's Trust Agreement, a Collective Bargaining Agreement, or applicable law, the employer shall remain subject to these audit procedures for the purpose of verifying that the employer made the proper contributions during the time period in which the employer was obligated to contribute to that Fund.

3.    Prior to conducting each audit, a Funds' auditor shall notify the Funds' Coordinator and review the employer's Collective Bargaining Agreement, and insure there is a Collective Bargaining Agreement in place as well as reviewing any pending issues. The Funds' auditor shall ensure that the audit period does not include any period prior to the execution of the document which binds the employer to a Collective Bargaining Agreement (i.e., Collective Bargaining Agreement, memorandum of agreement, memorandum of understanding, compliance form, association bargaining designation page, etc.) The Funds' Coordinator will forward a letter to the employer advising it of the impending audit, citing the Trustees' authority to conduct the audit and describing the records required.

4.    If, during a payroll audit, a Funds' auditor encounters an issue of interpretation of the Collective Bargaining Agreement or an employer takes a position inconsistent with the auditor's understanding of such Collective Bargaining Agreement, the auditor shall seek the opinion of the Funds Coordinator in consultation with the Union. If the Union agrees with the employer's interpretation or position, that shall resolve the matter, unless such interpretation or position is, in the view of the auditor, clearly inconsistent with the language of the governing documents or the employer's actual practice in remitting fringe benefits under the terms of the Collective Bargaining Agreement. In such an event, or if the Union and employer disagree, the Funds' auditor shall present the issue in writing to the Funds' Board of Trustees, or their designees, which may include a Collection Subcommittee, the Funds' Coordinator or Funds' Counsel for a recommendation for the Trustees' consideration and decision before completing the payroll audit.

5.    After an audit of an employer is conducted, a Funds' auditor shall allow the employer to review and respond to the auditor's finding(s). This may be accomplished by having the Funds' Coordinator forward the draft audit report to the employer allowing that employer fourteen (14) days in which to respond to said audit findings. After providing the employer with this time, or any reasonable extensions thereof, to respond to the auditor's findings, the auditor shall issue a final report to the Funds with its payroll audit findings. Prior to that time, the audit shall be in "draft" form and it should indicate such. Provided, however, in those circumstances where the auditor's findings do not reflect any deficiency, any exceptions or any need for supplemental audit procedures, the audit may be issued immediately in final form.

6.    All draft and final audits should be presented to the Funds' Coordinator prior to issuance to the employer.

7.    Upon issuance of the final report to the employer and the failure of the employer to respond to the Funds' Coordinator's letter enclosing the draft or final audit, Fund's Counsel shall send a letter to the employer demanding payment of any amounts found to be due by the auditor within seven (7) days thereof.  The letter shall state that interest on the delinquent contribution shall be calculated as set forth in Section II, Paragraph 2 of this Policy.  For purposes of implementing the procedures set forth in Sections II and III of this Policy, the Due Date, in the Trustees' discretion may be deemed to be seven (7) days after the date of the Funds' Counsel's letter.  In order to insure proper processing of any audit findings, whether in "draft" or final form, the auditor shall insure that Funds' Counsel receives copies of any "draft" or final audit reports so the Funds' Counsel may coordinate with the Funds' Coordinator in furtherance of these audit matters.

8.    The employer shall pay the actual cost of the payroll audit if the payroll audit results in a finding that the employer has underpaid, during any twelve (12) month period, at least (a) $2,000 or (b) 5% of the employer's annual contributions.

9.    In the event an employer refuses to permit an audit upon request by the Trustees, or if the employer refuses a Funds' auditor access to pertinent records, then the Funds' auditor shall refer the matter to Funds' Counsel and Funds' Coordinator.  If deemed appropriate, the Funds' Coordinator shall issue a letter allowing the employer seven (7) days in which to schedule an audit date before referral for non-compliance to Funds' Counsel, or he may immediately direct the matter to Funds' Counsel.  Funds' Counsel shall thereafter demand in writing that the employer make available such books and records as are necessary for the Funds' auditor to conduct an audit.  If the records are still not made available, Funds' Counsel shall institute legal action to enforce the Trustees' right to conduct a payroll audit and the employer shall pay to the Funds all costs and attorneys' fees incurred as a result of the employer's refusal to permit an audit or refusal to make available all pertinent records.

SECTION V

MISTAKEN CONTRIBUTIONS

1.    Subject to the terms and conditions of this Policy, an employer that makes a contribution to a Fund in excess of the amount required by the terms of the employer's Collective Bargaining Agreement, the Funds' Trust Agreements or applicable law and under a mistake of fact or law, may request a refund of the amount of such excess contribution.

2.    No refund of excess contributions shall be granted by a Fund without a written request for such refund having been received within six (6) months after the date that such excess contributions were received by the Fund.

- 8 -

3.     If the Fund incurred a direct or indirect cost, expense or liability as a result of an excess contribution, any refund of such contribution shall be reduced by the full value of such cost, expense or liability; provided however, in no event shall a credit or refund of contributions be taken or allowed for any period during which coverage and/or credited service has been provided by the Welfare, Annuity, Vacation and Pension Fund(s) to an individual based on the employer's payment or reporting, regardless of whether any such Fund(s) actually paid benefits or premiums on behalf of that individual and so long as it does not result in benefit loss to a Funds' participant.

4.     The obligation to discover and delineate the amount of excess contributions within the time limits provided within this Policy is the sole and exclusive responsibility of the employer.

5.     The request of the employer for a refund of excess contributions must be in writing and shall not be effective until it is received by a Fund.

6.     The request of the employer must contain copies of all documentation upon which the employer relies to substantiate its request or which may be required by a Fund to verify the exact amount of the excess contributions.

7.     The refund of such contributions may be made within six (6) months after the Trustees determine the contributions were made by mistake.

8.     The failure and/or refusal of the employer to promptly and fully comply with any or all of the provisions of this Policy shall result in the denial of the request for the refund.

9.     As used in this Policy, the term "refund" shall include the offset of previously-submitted excess contributions against currently due contributions ("credits"). As such, upon approval of the Trustees, an employer may be permitted to credit excess contributions, less a Fund's set-offs described in this Policy, against current contributions only to the same extent and under the same terms and condition as such employer may be entitled to a refund under this Policy. Any employer attempt to recoup any excess contribution through a procedure other than the one described in this Policy (for instance by the employer unilaterally taking a credit) shall result in the automatic forfeiture of the refund and the treatment of any credit taken by the employer as a delinquent contribution.

## SECTION VI

## LIQUIDATED DAMAGES, ATTORNEYS' FEES AND COSTS

1.     Liquidated damages shall be calculated from the Due Date, and shall become due and owing if suit is initiated.  The amount of the liquidated damages shall be the greater of:

- 9 -

a.  interest on the delinquent contributions determined in accordance with Section II, paragraph 2, or

b.  20% of the delinquent contributions.

2.  Attorneys' fees shall be due to the Funds from a delinquent employer at the rate charged to the Funds for such services, for all time spent by Funds' Counsel in collection efforts pursuant to Section III hereof or in enforcing the Board of Trustees' rights to payroll audits pursuant to Section IV hereof.

3.  All costs actually incurred relating to the collection of delinquent contributions or to enforce the Trustees' right to audit the employer's payroll records shall be due to the Fund from the delinquent employer, including, but not limited to filing fees, audit fees, fees for service of process, travel, copying charges, postage, expert fees, and such other costs as would otherwise be charged to the Board of Trustees.

## SECTION VII

### REPORTS

1.  The Funds' Coordinator, or as the case may be, the Funds' Counsel or auditor, shall prepare a periodic report to be presented at each meeting of Trustees. The report shall include a list of all employers for whom delinquency notice has been issued. Such report may also include the period of delinquency and an estimate of contributions due the Fund. Additionally, the reports will include a list of those employers who have undergone an audit during the calendar year.

2.  Legal Counsel shall prepare a report to be presented at each meeting of the Trustees. Such report shall state the period of delinquency, amount of delinquency and status of the collection efforts on each employer referred to Legal Counsel for collection.

## SECTION VIII

### NOTICE TO FUND PARTICIPANTS

1.  The Funds' office may notify each member of a delinquent employer when an asserted delinquency or deficiency notice is sent to an employer. Such notice may state that claims will not be processed for payment after sixty (60) days from the date of such notice.

2.  In such case as the Funds' office submits notification to members of a delinquent employer, such letter shall also include a payroll shortage report and a notification

- 10 -

that a Fund participant has thirty (30) days in which to supply any information about an alleged failure by an employer to pay fringe benefit contributions as required under the applicable Collective Bargaining Agreement.

APPROVED:

_____ May 19, 2006
Date

_____ May 19, 2006
Date

_____
Union Trustee

_____
Employer Trustee

436449v.2

- 11 -

# EXHIBIT B

INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 138 FRINGE BENEFIT FUNDS


AGREED-UPON PROCEDURES RELATING TO
SWEET HOLLOW MANAGEMENT CORP.

INDEPENDENT ACCOUNTANTS' REPORT ON
<u>APPLYING AGREED-UPON PROCEDURES</u>

Board of Trustees
International Union of Operating Engineers
Local 138 Fringe Benefit Funds
Farmingdale, NY 11735

At your request, we have performed the procedures described below, which were agreed to by the International Union of Operating Engineers Local 138 Fringe Benefit Funds ("the Funds") relating to Employer Remittance Reports and corresponding fringe benefit contributions submitted by Sweet Hollow Management Corp. ("the Employer") for the eleven month period ended May 2017, twelve month period ended May 2018, and the one month period ended June 30, 2018. Our procedures were performed to solely assist you in evaluating the monthly Employer's Remittance Reports ("Monthly Remittance Reports") and fringe benefit contributions paid, including the extent of compliance with the Collective Bargaining Agreements between the Employer and the International Union of Operating Engineers Local 138 applicable to the period July 1, 2016 through June 30, 2018. The Employer and the Funds are responsible for maintaining records of the Monthly Employer's Remittance Reports and fringe benefits paid. This engagement to apply agreed-upon procedures engagement was conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants. The sufficiency of the procedures is solely the responsibility of the specified users of the report. Consequently, we make no representations regarding the sufficiency of the procedures described below, either for the purpose for which this report has been requested or for any other purpose.

Our procedures and findings were as follows:

1. We read the collective bargaining agreements and, if applicable, related contract or subscriber agreement between the Employer and the International Union of Operating Engineers Local 138 for the period July 1, 2016 through June 30, 2018 to compare those terms in the agreements relevant to the Monthly Remittance Reports and to the other procedures enumerated below, such as: employees and employers covered by the collective bargaining agreements, wage pay-rate compliance, grease time hours reporting, hours classifications (standard versus over-time), classification of employees and definition of non-signatory related party contractors. In addition, we used the stamp denomination rate information in those agreements to calculate the amounts due with respect to the discrepancies noted when performing the procedures listed below and enumerated in the attached schedules "Summary of Discrepancies" and "Discrepancy worksheet in hours" for the eleven month period ended May 2017, twelve month period ended May 2018, and the one month period ended June 30, 2018.

29164

All exceptions found as a result of applying this procedure have been enumerated in the procedures and findings below.

2. We inspected the cash disbursements journal and accounts payable records and Form 1099s for compensation paid outside the payroll system to employees, owner operators, and non-signatory subcontractors.

No exceptions were found as a result of applying these procedures.

3. We compared the hours reported to the Funds on the Monthly Remittance Reports with the Employer's compensation records and payroll records of the Employers.

The hours reported to the Funds on the Monthly Remittance Reports agreed with the Employers' compensation records except for those discrepancies which were noted on the attached schedules "Discrepancy worksheet in hours" for the eleven month period ended May 2017, twelve month period ended May 2018, and the one month period ended June 30, 2018.

4. We compared the employees appearing on the employer's compensation records, annual federal tax return (Form W-2), and quarterly state tax returns of the Employer's, to the Monthly Remittance Reports.

The employees reported to the Funds on the Monthly Remittance Reports agreed with the Employers' compensation records except for those discrepancies which were noted on the attached schedules "Discrepancy worksheet in hours" for the eleven month period ended May 2017, twelve month period ended May 2018, and the one month period ended June 30, 2018.

5. We inspected payroll journal classification codes, and the Fund's reports for other trades for all employees not appearing on the Monthly Remittance Reports to ascertain whether the employee is working in a classification covered by the collective bargaining agreement.

No exceptions were found as a result of applying these procedures.

6. We compared the wages reported in the Employers' compensation records to the amounts specified in the respective Collective bargaining agreements as to whether wages are being paid according to the collective bargaining agreement (s).

No exceptions were found as a result of applying the procedures.

29164

Our discrepancies are presented in the accompanying schedules (see pages 1-10 attached). The "Summary of Discrepancies" schedule reflects the calculation of the unreported stamps using the rates from the agreements and the hours from the "Discrepancy worksheet in hours" to quantify the discrepancy amount in dollars. The total calculated discrepancy amount for the periods presented is $82,813.22 which is comprised of the following amounts:

| Audit Period | Sweet Hollow Management Corp. |
|---|---|
| July 1, 2016 through December 31, 2016 | $ 27,400.58 |
| January 1, 2017 through May 31, 2017 | 11,829.63 |
| June 1, 2017 through December 31, 2017 | 23,449.68 |
| January 1, 2018 through May 31, 2018 | 14,233.33 |
| June 1, 2018 through June 30, 2018 | 5,900.00 |
| | $82,813.22 |

Our procedures related to the Employers' payroll records only and did not extend to any financial statements of the Employers. The procedures were substantially less in scope than an audit of financial statements of the employer, the object of which is the expression of an opinion on the Employers' financial statements. We were not engaged to and did not conduct an audit of the Employers' financial statements. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

This report is intended solely for the information and use of the specified users listed above and is not intended to be and should not be used by anyone other than those specified users.

Certified Public Accountants

Jericho, New York
January 23, 2019

29164

**SWEET HOLLOW MANAGEMENT CORP.**
**1 SCHWAB ROAD #7**
**MELVILLE, N.Y. 11747**
**(HEAVY & BUILDING)**

**SUMMARY OF DISCREPANCIES**

**PERIOD: JULY 1, 2016 THROUGH DECEMBER 31, 2016**

| UNREPORTED STAMPS | | |
|---|---|---|
| STAMP DENOM. | QUANTITY | AMOUNT |
| S-40 HOUR @ $ 1,606.00 | 16 | $   25,696.00 |
| S-8 HOUR @ $ 321.20 | 1 | $      321.20 |
| S-1 HOUR @ $ 40.15 | 2 | $       80.30 |
| S-1/2 HOUR @ $ 20.08 | 1 | $       20.08 |
| S-1/4 HOUR @ $10.04 | 0 | $          - |
| O.T.-3 HOUR @ $ 101.25 | 0 | $          - |
| O.T. - 1 HOUR @ $ 33.75 | 1 | $       33.75 |
| O.T. - 1/2 HOUR @ $ 16.88 | 0 | $          - |
| G.T.-2.50 HOUR @ $65.75 | 19 | $     1,249.25 |
| G.T.-1/2 HOUR @ $13.15 | 0 | $          - |
| TOTALS | | $   27,400.58 |

LOCAL 138 BENEFIT FUNDS
EMPLOYER: SWEET HOLLOW MANANGEMENT CORP.
AUDIT PERIOD: JULY 1, 2016 THROUGH DECEMBER 31, 2016

DISCREPANCY WORKSHEET

| NAME / SS# | JULY '16 REG | O.T | G.T | AUG. '16 REG | O.T | G.T | SEP. '16 REG | O.T | G.T | OCT. '16 REG | O.T | G.T | NOV. '16 REG | O.T | G.T | DEC. '16 REG | O.T | G.T | TOTAL REG | O.T | G.T |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **JEFFREY HANOVER** 1 | 136 | 1 | | 0 | 0 | 0 | 75 | 0 | | 151 | | | 153 | 0 | | 138 | 0 | | 535.00 | 1.00 | |
| 2 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | | 116 | | | 0 | 0 | | 0 | 0 | | | | |
| 3 | 136 | | | 0 | | | 75 | | | 33 | | | 153 | | | 138 | | | | | |
| 4 | | 1 | | | 0 | | | 0 | | | | | | 0 | | | 0 | | | | |
| 5 | | | 8.50 | | | 0.00 | | | 4.50 | | | 9 | | | 9.50 | | | 8.50 | | | 40.00 |
| **DANIEL KAVANAUGH** 1 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | | 14.50 | | | 0 | 0 | | 0 | 0 | | -1.50 | 0.00 | |
| 2 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | | 16 | | | 0 | 0 | | 0 | 0 | | | | |
| 3 | 0 | | | 0 | | | 0 | | | -1.50 | | | 0 | | | 0 | | | | | |
| 4 | | 0 | | | 0 | | | 0 | | | | | | 0 | | | 0 | | | | |
| 5 | | | 0.00 | | | 0.00 | | | 0.00 | | | 0.50 | | | 0.00 | | | 0.00 | | | 0.50 |
| **LORENZO ZOLLI** 1 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | | 61 | | | 32 | 0 | | 24 | 0 | | 117.00 | 0.00 | |
| 2 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | | 0 | | | 0 | 0 | | 0 | 0 | | | | |
| 3 | 0 | | | 0 | | | 0 | | | 61 | | | 32 | | | 24 | | | | | |
| 4 | | 0 | | | 0 | | | 0 | | | | | | 0 | | | 0 | | | | |
| 5 | | | 0.00 | | | 0.00 | | | 0.00 | | | 3.50 | | | 2.00 | | | 1.50 | | | 7.00 |
| **TOTALS HOURS** | 136 | 1 | 8.50 | 0 | 0 | 0.00 | 75 | 0 | 4.50 | 92.50 | 0 | 13.00 | 185 | 0 | 11.50 | 162 | 0 | 10.00 | 650.50 | 1 | 47.50 |

1 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM P/R
2 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM CONTRIBUTION REPORTS
3 DISCREPANCY IN REGULAR TIME HOURS
4 DISCREPANCY IN OVERTIME HOURS
5 DISCREPANCY IN GREASE TIME HOURS

**SWEET HOLLOW MANAGEMENT CORP.**
**1 SCHWAB ROAD #7**
**MELVILLE, N.Y. 11747**
**(HEAVY & BUILDING)**

### SUMMARY OF DISCREPANCIES

**PERIOD: JANUARY 1, 2017 THROUGH MAY 31, 2017**

| | UNREPORTED STAMPS | |
|---|---|---|
| STAMP DENOM. | QUANTITY | AMOUNT |
| S-40 HOUR<br>@ $ 1,606.00 | 7 | $   11,242.00 |
| S-8 HOUR<br>@ $ 321.20 | 0 | $       . |
| S-1 HOUR<br>@ $ 40.15 | 3 | $      120.45 |
| S-1/2 HOUR<br>@ $ 20.08 | 1 | $       20.08 |
| S-1/4 HOUR<br>@ $10.04 | 0 | $       - |
| O.T.-3  HOUR<br>@ $ 101.25 | 0 | $       - |
| O.T. - 1 HOUR<br>@ $ 33.75 | 0 | $       . |
| O.T. - 1/2 HOUR<br>@ $ 16.88 | 0 | $       - |
| G.T.-2.50 HOUR<br>@ $65.75 | 6 | $      394.50 |
| G.T.-1/2 HOUR<br>@ $13.15 | 4 | $       52.60 |
| TOTALS | | $   11,829.63 |

LOCAL 08 BENEFIT FUNDS
**EMPLOYER: SWEET HOLLOW MANANGEMENT CORP.**
**AUDIT PERIOD: JANUARY 1, 2017 THROUGH MAY 31, 2017**

## DISCREPANCY WORKSHEET

| NAME SS# | | REG | O.T | G.T. | JAN. '17 REG | O.T | G.T | FEB. '17 REG | O.T | G.T | MARCH '17 REG | O.T | G.T | APRIL '17 REG | O.T | G.T | MAY '17 REG | O.T | G.T | TOTAL REG | O.T | G.T |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JEFFREY HANOVER | 1 | | 0 | 0 | | 0 | 0 | | 0 | 0 | 30.50 | 0 | 1.50 | 61 | 0 | 3.50 | 112 | 0 | 7 | | | |
| | 2 | | 0 | 0 | | 0 | 0 | | 0 | 0 | 0 | 0 | | 0 | 0 | | 0 | 0 | | | | |
| | 3 | | 0 | | | 0 | | | 0 | | 30.50 | 0 | | 61 | 0 | | 112 | 0 | | 203.50 | 0.00 | 12.00 |
| | 4 | | | 0 | | | 0 | | | 0 | | | 1.50 | | | 3.50 | | | 7 | | | |
| | 5 | | | | | | | | | | | | | | | | | | | | | |
| LORENZO ZOLLI | 1 | | 0 | 0 | | 0 | 0 | | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 80 | 0 | 5.00 | | | |
| | 2 | | 0 | 0 | | 0 | 0 | | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | | 0 | 0 | | 80.00 | 0.00 | 5.00 |
| | 3 | | 0 | | | 0 | | | 0 | | 0 | 0 | | 0 | 0 | | 80 | 0 | | | | |
| | 4 | | | 0 | | | 0 | | | 0.00 | | | 0.00 | | | 0.00 | | | 5.00 | | | |
| | 5 | | | | | | | | | | | | | | | | | | | | | |
| | 1 | | 0 | 0 | | 0 | 0 | | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | | 0 | 0 | | | | |
| | 2 | | 0 | 0 | | 0 | 0 | | 0 | 0 | 0 | 0 | | 0 | 0 | | 0 | 0 | | 0.00 | 0.00 | 0.00 |
| | 3 | | 0 | | | 0 | | | 0 | | 0 | 0 | | 0 | 0 | | 0 | 0 | | | | |
| | 4 | | | 0 | | | 0 | | | 0.00 | | | 0.00 | | | | | | | | | |
| | 5 | | | | | | | | | | | | | | | | | | | | | |
| TOTALS HOURS | | | 0 | 0 | | 0 | 0 | | 0 | 0 | 30.50 | 0 | 1.50 | 61 | 0 | 3.50 | 192 | 0 | 12 | 283.50 | 0 | 17.00 |

1 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM P/R
2 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM CONTRIBUTION REPORTS
3 DISCREPANCY IN REGULAR TIME HOURS
4 DISCREPANCY IN OVERTIME HOURS
6 DISCREPANCY IN GREASE TIME HOURS

Page 4 of 10

SWEET HOLLOW MANAGEMENT CORP.
1 SCHWAB ROAD #7
MELVILLE, N.Y. 11747
(HEAVY & BUILDING)

### SUMMARY OF DISCREPANCIES

PERIOD: JUNE 1, 2017 THROUGH DECEMBER 31, 2017

| UNREPORTED STAMPS | | |
|---|---|---|
| STAMP DENOM. | QUANTITY | AMOUNT |
| S-40 HOUR @ $ 1,690.00 | 13 | $   21,970.00 |
| S-8 HOUR @ $ 338.00 | 1 | $      338.00 |
| S-1 HOUR @ $ 42.25 | 1 | $       42.25 |
| S-1/2 HOUR @ $ 21.13 | 1 | $       21.13 |
| S-1/4 HOUR @ $10.57 | 0 | $        . |
| O.T.-3 HOUR @ $ 113.55 | 0 | $        . |
| O.T. - 1 HOUR @ $ 37.85 | 0 | $        . |
| O.T. - 1/2 HOUR @ $ 18.94 | 0 | $        . |
| G.T.-2.50 HOUR @ $65.75 | 16 | $    1,052.00 |
| G.T.-1/2 HOUR @ $13.15 | 2 | $       26.30 |
| TOTALS | | $   23,449.68 |

LOCAL 138 BENEFIT FUNDS
EMPLOYER: SWEET HOLLOW MANANGEMENT CORP,
AUDIT PERIOD: JUNE 1, 2017 THROUGH DECEMBER 31, 2017

DISCREPANCY WORKSHEET

| NAME / SS# | | JUNE '17 REG | OT | G.T | JULY '17 REG | OT | G.T | AUG '17 REG | OT | G.T | SEP '17 REG | OT | G.T | OCT '17 REG | OT | G.T | NOV '17 REG | OT | G.T | DEC '17 REG | OT | G.T | TOTAL REG | OT | G.T |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JAMES FLOWERS | 1–5 | 0 | 0 | 0.00 | 32 | 0 | 2.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 32.00 | 0.00 | 2.00 |
| LUCIOS DISTEFANO | 1–5 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 16 | 0 | 1.00 | 0.00 | 0.00 | 1.00 |
| PHILIP CARALLO | 1–5 | 0 | 0 | 0 | 0 | 0 | 0.0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 40 / 56 / -16 | 0 | 2.50 | 64 / 32 / 32 | 0 | 4 | 16.00 | 0.00 | 6.50 |
| JEFF HANOVER | 1–5 | 102.50 | 0 | 6 | 0 | 0 | 0.0 | 16 / -16 | 0 | 0.00 | 135.50 | 0 | 8.00 | 70 / 14 / 56 | 0 | 4 | 67.50 | 0 | 4.00 | 80 / 80 | 5.00 | 5.00 | 425.50 | 0.00 | 27.00 |
| LORENZO ZOLLI | 1–5 | 8 | 0 | 0.00 | 16 / 16 | 0 | 1 | 0 | 0 | 0.00 | 16 / 8 | 0 | 1.00 | 8 | 0 | 0.50 | 0 | 0 | 0.00 | 32 / 32 | 0 | 2 | 56.00 | 0.00 | 4.50 |
| | 1–5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0.00 | 0.00 | 0.00 |
| TOTALS HOURS | | 54.50 | 0 | 6.00 | 48 | 0 | 3.00 | -16 | 0 | 0.00 | 143.50 | 0 | 9.00 | 64 | 0 | 4.50 | 51.50 | 0 | 6.50 | 144 | 0 | 12.00 | 529.50 | 0 | 41.00 |

1 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM P/R
2 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM CONTRIBUTION REPORTS
3 DISCREPANCY IN REGULAR TIME HOURS
4 DISCREPANCY IN OVERTIME HOURS
5 DISCREPANCY IN GREASE TIME HOURS

**SWEET HOLLOW MANAGEMENT CORP.**
**1 SCHWAB ROAD #7**
**MELVILLE, N.Y. 11747**
**(HEAVY & BUILDING)**

## SUMMARY OF DISCREPANCIES

**PERIOD: JANUARY 1, 2018 THROUGH MAY 31, 2018**

|  | UNREPORTED STAMPS | |
|---|---|---|
| STAMP DENOM. | QUANTITY | AMOUNT |
| S-40 HOUR @ $ 1,690.00 | 8 | $  13,520.00 |
| S-8 HOUR @ $ 338.00 | 0 | $         - |
| S-1 HOUR @ $ 42.25 | 3 | $      126.75 |
| S-1/2 HOUR @ $ 21.13 | 1 | $       21.13 |
| S-1/4 HOUR @ $10.57 | 0 | $         - |
| O.T.-3  HOUR @ $ 113.55 | 0 | $         - |
| O.T. - 1 HOUR @ $ 37.85 | 0 | $         - |
| O.T. - 1/2 HOUR @ $ 18.94 | 0 | $         - |
| G.T.-2.50 HOUR @ $65.75 | 8 | $      526.00 |
| G.T.-1/2 HOUR @ $13.15 | 3 | $       39.45 |
| TOTALS | | $  14,233.33 |

LOCAL 138 BENEFIT FUNDS
EMPLOYER: SWEET HOLLOW MANANGEMENT CORP.
AUDIT PERIOD: JANUARY 1, 2018 THROUGH MAY 31, 2018

DISCREPANCY WORKSHEET

| NAME SS# | Line | JAN.'18 REG | JAN O.T | JAN G.T. | FEB.'18 REG | FEB O.T | FEB G.T. | MARCH'18 REG | MARCH O.T | MARCH G.T. | APRIL'18 REG | APRIL O.T | APRIL G.T. | MAY'18 REG | MAY O.T | MAY G.T. | TOTAL REG | TOTAL O.T | TOTAL G.T. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JEFF HANOVER | 1 | 0 | 0 | 0 | 23 | 0 | 1.00 | 24 | 0 | 1.50 | 63 | 0 | 3.50 | 101.50 | 0 | 6.00 | 171.50 | | 12.00 |
| | 2 | 0 | 0 | 0 | 23 | 0 | 0 | 24 | 0 | 0.00 | 63 | 0 | 0 | 40 | 0 | 0 | | | |
| | 3 | 0 | | | | | | | | | | | | 61.50 | | | | | |
| | 4 | | | | | | | | | | | | | | | | | 0.00 | |
| | 5 | 0 | | 0 | 0 | | 1.00 | 0 | | 1.50 | 0 | | 3.50 | 0 | | 6.00 | | | |
| LORENZO ZOLLI | 1 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 16 | 0 | 1.00 | 16.00 | | 1.00 |
| | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 16 | 0 | 0 | | | |
| | 3 | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | | | |
| | 4 | | | | | | | | | | | | | | | | | 0.00 | |
| | 5 | 0 | | 0 | 0 | | 0.00 | 0 | | 0.00 | 0 | | 0 | 0 | | 1.00 | | | |
| ANTHONY GUADAGNO | 1 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 32 | 0 | 0.00 | 72 | 0 | 4.50 | 104.00 | | 6.50 |
| | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 32 | 0 | 0.0 | 72 | 0 | 0 | | | |
| | 3 | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | | | |
| | 4 | | | | | | | | | 2 | | | 2 | | | | | 0.00 | |
| | 5 | 0 | | 0 | 0 | | 0.00 | 0 | | 0.00 | 0 | | 0 | 0 | | 4.50 | | | |
| SCOTT MAZZEO | 1 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 32 | 0 | 2.00 | 32.00 | | 2.00 |
| | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0 | 32 | 0 | 0 | | | |
| | 3 | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | | | |
| | 4 | | | | | | | | | | | | | | | | | 0.00 | |
| | 5 | 0 | | 0 | 0 | | 0.00 | 0 | | 0.00 | 0 | | 0 | 0 | | 2.00 | | | |
| TOTAL HOURS | | 0 | 0 | 0.00 | 23 | 0 | 1.00 | 24 | 0 | 1.50 | 95 | 0 | 5.50 | 161.50 | 0 | 13.50 | 323.50 | 0 | 21.50 |

1 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM P/R
2 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM CONTRIBUTION REPORTS
3 DISCREPANCY IN REGULAR TIME HOURS
4 DISCREPANCY IN OVERTIME HOURS
5 DISCREPANCY IN GREASE TIME HOURS

SWEET HOLLOW MANAGEMENT CORP.
1 SCHWAB ROAD #7
MELVILLE, N.Y. 11747
(HEAVY & BUILDING)

### SUMMARY OF DISCREPANCIES

**PERIOD: JUNE 1, 2018 THROUGH JUNE 30, 2018**

| UNREPORTED STAMPS | | |
|---|---|---|
| STAMP DENOM. | QUANTITY | AMOUNT |
| S-40 HOUR @ $ 1,778.00 | 3 | $ 5,334.00 |
| S-8 HOUR @ $ 355.60 | 1 | $ 355.60 |
| S-1 HOUR @ $ 44.45 | 0 | $ - |
| S-1/2 HOUR @ $ 22.23 | 0 | $ - |
| S-1/4 HOUR @ $11.112 | 0 | $ - |
| O.T.-3 HOUR @ $ 125.70 | 0 | $ - |
| O.T. - 1 HOUR @ $ 41.90 | 0 | $ - |
| O.T. - 1/2 HOUR @ $ 20.97 | 0 | $ - |
| G.T.-2.50 HOUR @ $65.75 | 3 | $ 197.25 |
| G.T.-1/2 HOUR @ $13.15 | 1 | $ 13.15 |
| TOTALS | | $ 5,900.00 |

LOCAL 138 BENEFIT FUNDS
EMPLOYER: SWEET HOLLOW MANANGEMENT CORP.
AUDIT PERIOD: JUNE 1, 2018 THROUGH JUNE 30, 2018

DISCREPANCY WORKSHEET

| NAME SS# | | REG | O.T | G.T. | REG | O.T | G.T | REG | O.T | G.T | REG | O.T | G.T | REG | O.T | G.T | REG | O.T | G.T | JUNE '18 REG | O.T | G.T | TOTAL REG | O.T | G.T |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JEFF HANOVER | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0 | 0 | 0 | 56 | 0 | 3.50 | 56.00 | 0.00 | 3.50 |
| | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56 | 0 | 3.50 | | | |
| | 4 | | | | | | | | | | | | | | | | | | | | | | | | |
| | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 3.50 | | 0.00 | 3.50 |
| LORENZO ZOLLI | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0 | 0 | 0 | 40 | 0 | 2.50 | 40.00 | 0.00 | 2.50 |
| | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 40 | 0 | 2.50 | | | |
| | 4 | | | | | | | | | | | | | | | | | | | | | | | | |
| | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 2.50 | | 0.00 | 2.50 |
| SCOTT MAZZEO | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 32 | 0 | 2.00 | 32.00 | 0.00 | 2.00 |
| | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | | | |
| | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 32 | 0 | 2.00 | | | |
| | 4 | | | | | | | | | | | | | | | | | | | | | | | | |
| | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | 0 | 0 | 0.00 | | 0 | 2.00 | | 0.00 | 2.00 |
| TOTALS HOURS | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 128.00 | 0.00 | 8.00 | 128.00 | 0.00 | 8.00 |

1 REGULAR TIME, OVERTIME HOURS & GREASE TIME HOURS FROM PFR
2 REGULAR TIME & OVERTIME HOURS & GREASE TIME HOURS FROM CONTRIBUTION REPORTS
3 DISCREPANCY IN REGULAR TIME HOURS
4 DISCREPANCY IN OVERTIME HOURS
5 DISCREPANCY IN GREASE TIME HOURS

# EXHIBIT C



**PITTA LLP**
Attorneys at Law

120 Broadway, 28th Floor
New York, New York 10271
Tel: (212) 652-3890
Facsimile: (212) 652-3891

**Michael Bauman**
**Of Counsel**
Direct Dial: (212) 542-5536
mbauman@pittalaw.com

January 28, 2019

**VIA UPS**

Sweet Hollow Management Corp.
1 Schwab Road, Ste. 7
Melville, NY  11747

   Re: **IUOE Local 138 Employee Benefit Funds**
      **Payroll Audit Findings**

Dear Sirs:

  This firm represents the Trustees of the International Union of Operating Engineers Local 138 Employee Benefit Funds (the "Funds").  Enclosed is a draft audit report from the Independent Auditors retained by the Funds.  The findings reflect delinquent contributions owed for the period from July 1, 2016 through June 30, 2018 in the total amount of $82,813.22.

  Please review the audit and advise within five business days of any response or rebuttal or providing payment.  Your failure to do so will result in further enforcement action by the Funds including commencement of a federal lawsuit.

        Very truly yours,

        Michael Bauman

MB/djb
Enclosure

cc: Mr. William K. Duffy, Jr.

{00657332.DOCX / }

## Deborah J. Bobb

| | |
|---|---|
| **From:** | UPS Quantum View <pkginfo@ups.com> |
| **Sent:** | Wednesday, January 30, 2019 10:19 AM |
| **To:** | Deborah J. Bobb |
| **Subject:** | UPS Delivery Notification, Tracking Number 1Z18E63Y0196904639 |



### Your package has been delivered.

**Delivery Date:** Wednesday, 01/30/2019
**Delivery Time:** 10:12 AM

At the request of PITTA LLP this notice alerts you that the status of the shipment listed below has changed.

# Shipment Detail

| | |
|---|---|
| **Tracking Number:** | **1Z18E63Y0196904639** |
| **Ship To:** | Sweet Hollow Management Corp.<br>Sweet Hollow Management Corp.<br>1 SCHWAB RD<br>MELVILLE, NY 11747<br>US |
| **UPS Service:** | UPS NEXT DAY AIR |
| **Number of Packages:** | 1 |
| **Weight:** | 0.5 LBS |
| **Delivery Location:** | FRONT DESK |
| | HUNTINGTON |
| **Reference Number 1:** | 605679.002 |

Hundreds of ticket deals & offers, updated daily.

START SAVING NOW ▶

*UPS My Choice®*

1

Download the UPS mobile app

© 2019 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this e-mail. UPS will not receive any reply message.
For more information on UPS's privacy practices, refer to the UPS Privacy Notice.
For questions or comments, visit Contact UPS.

This communication contains proprietary information and may be confidential. If you are not the intended recipient, the reading, copying, disclosure or other use of the contents of this e-mail is strictly prohibited and you are instructed to please delete this e-mail immediately.

**UPS Privacy Notice**

**Help and Support Center**